In Re NFC Technology, case number 16-1809. We'll hear the arguments from Mr. Wright. Thank you, Your Honor, and may it please the Court. NFCT is asking the Court to limit Claim 13 and Claim 29 here to be consistent with the invention that's described in the accompanying specification. And to be consistent, the input terminal of the antenna circuit and the end coils, or the end terminals of the antenna coil, must be electrically distinct from each other. That is the only way to achieve the central aspect of the invention here, which is the establishment of a first impedance at the input to the antenna circuit. Mr. Wright, you say the claim should be construed to be consistent with the specification. The problem is the specification isn't consistent with itself if you include Figure 6. Is Your Honor referring to the issue of the mislabeled points G and H? Well, mislabeling is your characterization of it. I think it's not just our characterization. I think the only reasonable reading of the patent specification here, when you look specifically at the top of column 15, down through line 32, anyone reading that description right there and then turning to Figure 6 or reading it in conjunction with Figure 6 would recognize that points G and H were mislabeled in Figure 6. And that is the only intrinsic evidence that the office relies on to support its broad claim construction, or the broadest aspect of its claim construction. And the broadening language... How do we know that lines 3 to 6 are not what is in error? After all, the claims don't tell us very much about the 2N terminal. So lines 3 to 6 at the top of column 15? Yes. You're saying that Figure 6 is wrong because it's inconsistent with the top of 15. Well, maybe the top of 15 is wrong. Well, Your Honor, it's not just the top of column 15. If you read down through that entire section, you actually get to a numerical example that shows an order of magnitude shift in the impedance from the input of the antenna circuit at 10 ohms to 100 ohms at point G and H, and then to 1,000 ohms, a kiloohm, at point C and D. And you can't get that magnitude of impedance change if point G and point C are electrically identical. So it's more than just the top of column 15. Are you saying that a person of ordinary skill would know that point G should be on the other side of the capacitor and would know it was a mistake? Well, absolutely. That's what the language in the specification says explicitly, that point G is located in between the filter and capacitor C2. So when this was discovered, I gather it was too late or whatever in the procedure to issue some sort of correction or to request a correction or to explain point G or something or other? Well, yes, but this also lies in the nature of a simple typographical error, one that would be apparent to anybody reading the specification. Nobody spotted it until the reply argument, I gather. I don't know whether it was spotted earlier in the context of the inter partes review proceeding, which I can speak to. It really didn't emerge until the reply. You're saying it could have been spotted but not corrected? That's possible. I just don't know. I just don't know the answer to that. But isn't the point whether the claims require the input in N terminals to be electrically distinct? It is. And where can you point out in, say, claim 13 where it recites that? So I think where it sits really is with, well, first, the separate recitation of an input terminal and the N terminals of an N coil, and most importantly, the first impedance that's called out there. It's a deliberately established first impedance that really cuts to the central aspect of the invention, which is the ability to then apply a control signal and establish a second impedance elsewhere in the circuit for the efficient extraction of power. But the claim doesn't mention the second impedance. I don't understand. It appears that there was no proposed amendment to this claim. Was that because the Naur claims not involved in this proceeding sufficiently took care of the first and second impedance? Certainly, dependent claim 14 calls out a higher impedance point that occurs with the application of a control signal in the passive mode of operation. But I think the other reason as a practical matter is that the value of this patent lies in the past, and an amendment of that type to Figure 1 certainly impacts the value of the patent and a recognition that well over a year ago, and probably still today, it's not the ideal venue to amend claims during an IPR. So I think there were a lot of reasons, both practical, why the patent owner chose not to amend. You're saying the value of the patent is in construing it more broadly than the specification supports. Well, certainly not. The patent specification, I think, consistently and repeatedly and exclusively shows an antenna circuit where the input terminal is electrically distinct from the endpoints of the antenna coil. And that's what one of ordinary skill in the art reading this specification would conclude. So all you needed was to amend the claim to say that? Well, we think the first impedance and the separate recitation of the endpoints of an antenna coil and the input to the circuit, those are not just superfluous claim elements. They have and are supposed to have some meaning in view of the specification. Is your view that by using the word first, you necessarily imply there's a second? That's part of it. I mean, why would we normally read that? I mean, you could have independent claims that just have a first, and you only want one impedance. And the reason you put the first in is because in your dependent claims, you start talking about second impedances. So the first impedance here, what that suggests, and I think the only thing it suggests upon reading the specification from front to back, is that's not an inherent impedance that exists in the circuit. It is the impedance that is established when the antenna circuit is tuned to the control, sorry, tuned to the frequency at which it's going to operate. And that when you look back, if you look at the claim in isolation, I think the person skilled in the art might be scratching his head and saying, why call out a first impedance here? It doesn't make sense to me, maybe. I look back at the specification, and I see that the central aspect of this invention is the ability to set that first impedance in a circuit that has that first impedance, so that you can do what's done in claim 14, which independently sets up the control signal in the passive mode and puts a higher impedance point in the circuit. So claim 13, maybe another way to look at it, is it sets up the structure of the antenna circuit. And claim 14 does not add an additional element to the antenna circuit. It's the same antenna circuit. You cannot achieve what is set forth in dependent claim 14 without having the input terminal be distinct, electrically distinct, from the endpoints of the antenna coil. When you collapse those, then the antenna coil becomes your antenna circuit, and that's what's in the prior art. And in the prior art, and in the 664 specification, it discusses this. Ordinarily, in the active mode, you don't want any impedance in that antenna circuit. You want the full power of the input signal going out of the antenna. And that's why the prior art has no electrical distinction. The inputs to the antenna circuit in the prior art are the endpoints of the antenna coil. Here, the inventor went against the grain there, deliberately established an antenna circuit where you can set up this first impedance, that thereafter allows the establishment of a different impedance elsewhere in the circuit. Absent additional questions, I'll yield the remainder of my time. All right. Let's hear from the other side. Mr. Hickman. Good morning, Your Honor. May it please the Court. NFCT contends that the essence of the invention requires electrically distinct terminals. But the claims say otherwise. They say nothing about electrical distinction. They fail to recite anything about different impedances. And the drawings, specification, and unrebutted expert testimony back up what is apparent from the face of the claims. I would agree with the observations that the Court already made this morning about the claim language and the specification. I would just add two additional points. Number one is that there was expert testimony that HTC offered below in this case, which supports the Board's findings on the claims and the claim language and the specification text. So to the extent the Court were to have any doubt about the intrinsic record, HTC's expert across the Board confirmed the Board's findings. NFCT never attempted to refute that expert testimony below. You're saying we should believe one expert and not the other? Well, there was no other expert in this case. What was the argument from the specification? Well, the expert's testimony here, if I understand the Court's question correctly, there was no inconsistency between the specification and the expert's testimony. The expert said a person of ordinary skill would look at the intrinsic record, would see point G in that drawing. And if we take figure six for what it discloses, it shows point G and the end terminal not electrically distinct. And so that, I think the drawing and the expert's testimony are consistent on that point. I just want to be sure. You say that if one side produces an expert and the other one doesn't, that ends it? No, it's certainly not. The Board has to weigh all the evidence that's in the record, and the Board did so here. And certainly if there had been a stark inconsistency between what the expert was saying and what the intrinsic record shows, then it would be a different situation. But that was not the case here. And I would... The Board is supposed to be an even-handed arbiter. The Board has taken a position here now as an adversary. But the Board is supposed to weigh all sides, the sources, the credibility, the support, and reach a conclusion. Yes, I would agree, and I believe that is what the Board did here. And I did not hear NFCT challenging any of that expert's testimony. I would also note, as a second point, that Claim 14 still stands, and Claim 14 was not challenged in this IPR. And I think Claim 14 really covers what NFCT says is sort of the essence of the invention. And so NFCT still has that claim, even though Claims 13 and 29 were found unpatentable. Unless there are any further questions, I will yield the rest of my time to the Court. All right. So I won't ask you again to defend why the Board is here in this non-controversy, arguing a case that has no consequences for anybody. Well, I would echo what Mr. McManus said in the prior argument. And I think Congress did say that there is a case for controversy in a situation like this. And to quote Section 143— It didn't say—it didn't create a controversy. The Board is not a party. It authorized the Director to intervene, however. And to your saying that that's open-ended, no restrictions on what was intended, I think that's unlikely. I believe the statutory language is quite broad, and there is no qualification in Section 143. It simply says that the Director shall have the right to intervene in an appeal from an inter-parties review under the AIA. In addition to what Mr. McManus noted, I would also say that when the Office does intervene to defend the Board's decisions, it's doing so in the public interest. The ultimate goal of IPRs and of all proceedings before the Board is to get patentability determinations right. And so when we show up in court to defend the Board, we're also acting in the public interest to make sure that those patentability determinations receive proper defense before an Article III court. Okay. Thank you, Mr. Hickman. Thank you. Mr. Wright. Thank you, Your Honor. Just one quick point. There is no support in the patent specification for the situation where the antenna circuit has an input terminal and the endpoints of the end terminal as electrically the same point. And that's the primary reason why NFCT is asking this court to read Claim 13 consistent with the specification here. Any more questions? Thank you. Thank you both. The case is taken under submission.